WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| Lance Buckley, | No. CV-17-0527-TUC-LCK |
| Plaintiff, | **ORDER** |
| v. | |
| Nancy A. Berryhill, | |
| Defendant. | |

Plaintiff Lance Buckley filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of Social Security (Commissioner). (Doc. 1.) Before the Court are Buckley's Opening Brief, Defendant's Responsive Brief, and Buckley's Reply. (Docs. 16, 17, 20.) The parties have consented to Magistrate Judge jurisdiction. (Doc. 11.) Based on the pleadings and the Administrative Record, the Court remands this matter for further proceedings.

**PROCEDURAL HISTORY**

Buckley filed an application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) in February 2011. (Administrative Record (AR) 318, 325.) He alleged disability from April 1, 2010, which he later amended to October 30, 2009. (AR 318, 441.) Buckley's application was denied upon initial review (AR 109-36) and on reconsideration (AR 150-81). A hearing was held on November 26, 2012 (AR 71-108), after which the ALJ found that Buckley was not disabled because he could perform other work available in the national economy (AR 185-95). The Appeals Council granted

1   Buckley's request to review the ALJ's decision and remanded for further proceedings. (AR

2   202-04.) A supplemental hearing was held on March 30, 2016 (AR 39-69), after which the

3   ALJ again determined that Buckley was not disabled because he could perform other work

4   available in the national economy (AR 17-31). The Appeals Council denied Buckley's

5   request to review the ALJ's second decision. (AR 1.)

6                          **FACTUAL HISTORY**

7       Buckley was born on January 11, 1974, making him 35 years of age at the onset

8   date of his alleged disability. (AR 318.) Buckley had worked as a truck driver and on a pig

9   farm. (AR 399.) Some of his impairments stem from a 2002 vehicle accident, for which he

10  has received worker's compensation.

11      The ALJ found Buckley had several severe impairments: left shoulder AC

12  disruption, status post multiple surgeries, right knee meniscal disruption, status post

13  multiple surgeries, and degenerative disc disease. (AR 19.) The ALJ determined Buckley

14  had the Residual Functional Capacity (RFC) to perform:

15          light work . . . except the claimant can occasionally lift and/or carry twenty
            pounds and frequently lift and/or carry ten pounds. The claimant can stand
16          and/or walk with normal breaks for a total of four hours in an eight-hour day.
            The claimant is able to sit, with normal breaks, for a total of about six hours
17          in an eight-hour day. The claimant's ability to push and/or pull with his upper
            extremities is unlimited other than for the weights listed above. The
18          claimant's ability to reach overhead is restricted bilaterally. The claimant can
            occasionally climb ramps or stairs. The claimant can never climb ladders,
19          ropes or scaffolds. The claimant can frequently balance, occasionally stoop,
            kneel, crouch or crawl. The claimant is limited to occasional left overhead
20          reaching and occasional bilateral overhead lifting. The claimant is able to
            engage in unlimited bilateral handling, fingering or feeling.
21
22  (AR 24.) The ALJ concluded at Step Five, based on the testimony of a vocational expert

23  (VE), that Buckley could perform work that exists in significant numbers in the national

    economy. (AR 30-31.)
24
25                          **STANDARD OF REVIEW**

        The Commissioner employs a five-step sequential process to evaluate SSI and DIB
26
    claims. 20 C.F.R. §§ 404.1520; 416.920; *see also Heckler v. Campbell*, 461 U.S. 458, 460-
27
    462 (1983). To establish disability the claimant bears the burden of showing he (1) is not
28
    working; (2) has a severe physical or mental impairment; (3) the impairment meets or

equals the requirements of a listed impairment; and (4) claimant's RFC precludes him from performing his past work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At Step Five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, she does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The findings of the Commissioner are meant to be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)). The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). This is so because the ALJ "and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019 (quoting *Richardson v. Perales*, 402 U.S. 389, 400 (1971)); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). The Commissioner's decision, however, "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998) (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). Reviewing courts must consider the evidence that supports as well as detracts from the Commissioner's conclusion. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

## DISCUSSION

Buckley contends that five errors occurred at the administrative level: (1) the Appeals Council erred in 2014 when it remanded for further proceedings; (2) the ALJ failed

to provide clear and convincing reasons for rejecting Buckley's credibility; (3) the ALJ erred in giving reduced weight to the opinions of Nurse Practitioner Trujillo, Dr. Wilson, and Physician's Assistant Rice; (4) the ALJ failed to give any weight to treating physician Dr. John Ledington; and (5) the ALJ erred in handling the VE testimony.

**Appeals Council**

Buckley argues that, upon initial review in December 2014, the Appeals Counsel should have remanded for benefits rather than for further proceedings. In the face of Defendant's argument – that this Court cannot review the Appeals Council's December 2014 decision – Buckley failed to offer a reply. (Doc. 20.) This Court has jurisdiction to review the agency's "final decision." 42 U.S.C. § 405(g). Because the Appeals Council declined review the second time, the final administrative decision in Buckley's case is the ALJ's April 2016 decision. *See Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011). Buckley timely sought review of that decision before this Court and it is the only one at issue now.

**Credibility**

Buckley argues the ALJ failed to provide clear and convincing reasons to reject his testimony. In general, "questions of credibility and resolution of conflicts in the testimony are functions solely" for the ALJ. *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). However, "[w]hile an ALJ may certainly find testimony not credible and disregard it . . . [the court] cannot affirm such a determination unless it is supported by specific findings and reasoning." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884-85 (9th Cir. 2006); *Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1995) (requiring specificity to ensure a reviewing court the ALJ did not arbitrarily reject a claimant's subjective testimony); SSR 96-7p. "To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

Initially, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell*, 947 F.2d at 344). The ALJ found Buckley had satisfied part one of the test by proving an impairment that could produce the symptoms alleged. (AR 24.) Next, if "there is no affirmative evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281, 1283-84 (9th Cir. 1996)). Here, the ALJ did not make a finding of malingering. Therefore, to support his discounting of Buckley's assertions regarding the severity of his symptoms, the ALJ had to provide clear and convincing, specific reasons. *See Garrison*, 759 F.3d at 1014-15; *Vasquez v. Astrue,* 572 F.3d 586, 591 (9th Cir. 2008) (quoting *Lingenfelter*, 504 F.3d at 1036).

In his 2011 function reports and his testimony from 2012 and 2106, Buckley stated that his ability to lift, squat, bend, kneel, walk, stair climb, and reach with his left arm was impaired due to pain (AR 394, 430); he was unable to get out of his bed due to headaches, which could last for several days and occurred multiple times per week (AR 95, 99, 425-26); he could sit or stand for 30 minutes at most (AR 86-87, 97); he could only lift 5 pounds with his left arm (AR 94); and he was in psychiatric treatment because of anxiety, paranoia, and anger (AR 46-49).

The ALJ cited the following reasons for finding Buckley not entirely credible: he demonstrated improvement in functional ability over time, consultative exams and IMEs noted a high level of physical functioning, a treating physician concluded Buckley could work, and medical evidence revealed grossly normal physical findings (except for his right knee and left shoulder). (AR 29.)

To evaluate the ALJ's credibility finding, the Court finds it necessary to set forth a partial time-line from the Administrative Record. Buckley alleges an onset date of October 30, 2009. That same day, he saw Dr. Washburn, who referred him for surgery on his right

knee. (AR 664.) The surgery was done on January 5, 2010. (AR 662.) Dr. Washburn determined that Buckley could not work through the end of March due to that surgery. (AR 554-555.) In March, Dr. Washburn concluded that Buckley's prior left shoulder surgery had failed, and he performed a second surgery on May 5, 2010. (AR 546, 550.) An April 6, 2010 MRI, revealed a tear in Buckley's right lateral meniscus and he was referred to Dr. Washburn for a surgical consult. (AR 540, 548.) In August, Dr. Washburn concluded that Buckley's left shoulder surgery failed (again) while doing physical therapy to rehabilitate it. (AR 539, 661.) That same month, Buckley had a second surgery on his right knee for the meniscus tear. (AR 538, 800.) Dr. Washburn performed another left shoulder surgery in October 2010. (AR 658.) In April 2011, Dr. Washburn released Buckley for part-time work (AR 798); not until September 29, 2011, did Dr. Washburn rate him permanent stationary and able to work full-time. (AR 651). Thus, for the first two years after Buckley's alleged onset date, he was unable to work according to Dr. Washburn because he needed surgery or was rehabilitating from surgery.

Only four months later, in January 2012, Dr. Washburn documented that Buckley could not work due to right knee instability. (AR 650.) Dr. Washburn treated it conservatively but, in June 2012, recommended a diagnostic arthroscopy on the right knee because the treatment had not worked. (AR 644.) On July 12, 2013, Dr. Washburn noted that Buckley "continue[d] to be disabled by his conditions." (AR 794.) The recommended knee surgery did not occur until July 2013, due to worker's compensation litigation. (AR 792, 795-797.) In October 2013, Dr. Washburn determined Buckley could do sedentary part-time work. (AR 774.) By February 2014, Dr. Washburn concluded that Buckley remained "significantly disabled" due to his knee and needed a knee replacement. (AR 770-771.) Buckley's right knee was replaced in March 2014 (AR 762); Dr. Washburn released him to work on June 26, 2014 (AR 749, 750, 754, 755), and found him permanent stationary as of May 4, 2015 (AR 788-89). Thus, from July 2013 until June 2014, Dr. Washburn placed Buckley in off-work status due to his right knee.

From January 2012 (when Dr Washburn stated Buckley was unable to work due to knee instability) until July 2013 (when Dr. Washburn noted that Buckley continued to be disabled and he performed another surgery), Dr. Washburn did not provide any clear statements on Buckley's ability to work. There are two contradictory items in the record during this time. As of June 2012, Dr. Washburn believed further knee surgery was warranted; it was delayed for non-medical reasons. In November 2012, Dr. Washburn signaled a disagreement with PA Rice's very restrictive limitations and stated Buckley could do sedentary to light work. (AR 698.) Without question, Dr. Washburn determined Buckley could not work from October 30, 2009 to September 29, 2011. Also, Buckley could not work from July 2013 to June 2014. The record is ambiguous regarding Dr. Washburn's opinion on Buckley's ability to work between January 2012 and July 2013.

Considering the full time-line of Buckley's medical history since his alleged onset date, the Court concludes that the ALJ failed to provide a clear and convincing reason to discount Buckley's symptom testimony. First, the ALJ relied on Buckley's improved functional ability over time. Although his right knee and left shoulder ultimately improved over time, Dr. Washburn did not opine that Buckley could work for an extended period until June 2014, almost five years after his alleged onset date of disability. During some portion of this time in 2011, Dr. Ledington also concluded that Buckley could not work due to his headaches. (AR 573, 574, 578, 611.) The medical record documents continued treatment and complaints of headaches well into 2012. (AR 423-24, 617-18, 621, 633, 641-43, 673, 690-92.) The ALJ did not mention nor discredit Buckley's headache testimony.

Second, the ALJ relied upon the examination by consulting physicians and independent medical examiners, who found Buckley retained a high-level of functioning. All the cited examining physician's reports occurred between June 2011 and June 2012. Thus, these exams fell within the window of time after which Buckley had completed rehabilitation on his left shoulder and before Dr. Washburn recommended further right knee surgery. Dr. Ring examined Buckley in June 2011, two months after Dr. Washburn determined Buckley could work up to 30 hours per week. (AR 568, 798.) Dr. Kahn

examined Buckley in November 2011 and Dr. Werrell examined Buckley in December 2011, both during the window between Dr. Washburn's September 2011 clearance for full-time work and his January 2012 opinion that Buckley's knee instability precluded work. (AR 650, 651, 624-25.) The later IME was in June 2012, in the same month that Dr. Washburn recommended further knee surgery be considered. Interestingly, those IME doctors determined that Buckley was limited to sedentary work because he could only walk for 15 minutes out of each hour (AR 683), a finding the ALJ rejected (AR 27). Despite relying on Dr. Werrell's findings to discount Buckley's credibility, the ALJ gave Dr. Werrell's opinion reduced weight because Buckley was more limited than found by that doctor. (AR 26.) Because the IMEs were conducted for Buckley's worker's compensation claim, those doctors did not assess any limitations from Buckley's reported headaches because they were determined to be unrelated to his 2002 accident. (AR 680, 692-93.) The Court finds the examining doctors' opinions cited by the ALJ were not a clear and convincing reason to discount Buckley's symptom testimony because the ALJ did not fully adopt their opinions, the IME doctors evaluated only limitations they concluded arose from the 2002 accident (which excluded headaches), and the exams occurred during a limited window of physical stability for Buckley.

Third, the ALJ gave great weight to Dr. Washburn's opinion that Buckley could work full-time as of March 2016 and relied upon his opinion to discount Buckley's symptom testimony. (AR 28 (citing AR 1007).) The ALJ failed, however, to weigh the numerous lengthy periods of time in which Dr. Washburn found Buckley unable to work in the five years after his onset date. Additionally, Dr. Washburn treated solely Buckley's shoulder and knee to the extent damaged in the 2002 accident; he did not opine on limitations arising from any other impairments. For those reasons, the Court finds that Dr. Washburn's 2016 opinion was not a clear and convincing reason to discount the entirety of Buckley's symptom testimony.

The remaining basis for discounting Buckley's credibility was the objective medical evidence. If the objective medical evidence fully explained a claimant's symptoms, then

credibility would be irrelevant. Credibility factors into the ALJ's decision only when the claimant's stated symptoms are not substantiated by the objective medical evidence. SSR 96-7p. Thus, it is error for an ALJ to discount credibility solely because a claimant's symptoms are not substantiated by the medical evidence. *Id.*; *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). As this is the only basis remaining for the ALJ's credibility finding (AR 29) it is insufficient to sustain it. Additionally, in finding that Buckley exhibited "grossly normal physical findings," the ALJ excluded his knee and shoulder "particularly just prior to or post-surgery." (AR 29.) The ALJ failed to acknowledge that Buckley was in a pre- or post-surgical status for his left shoulder or right knee, or both, for most of a five-year period.

When the medical record is evaluated longitudinally, the ALJ failed to provide clear and convincing reasons supported by substantial record evidence to support his rejection of Buckley's symptom testimony.[1]

**Treating Physician, Dr. John Ledington**

Buckley saw Dr. Ledington several times in 2011 and possibly 2012. (AR 573-78 (May and June 2011 appointments), 608-11 (2 appointments August 2011), 699 (reference last appointment in May 2012).) During that period, Dr. Ledington opined that Buckley could not work due to severe headaches. (AR 559, 573, 578, 611.) At the second hearing, the ALJ noted that if he accepted Dr. Ledington's May 23, 2011 opinion that Buckley's headaches were so severe as to preclude work, then he would have to find him unable to work. (AR 57.) However, in his written decision, the ALJ did not mention Dr. Ledington's opinion. It was error for the ALJ to reject Dr. Ledington's opinion without explanation. *See Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014).

---

[1] In his opening brief, Buckley noted that the ALJ cited several reasons to discount Buckley's testimony. (Doc. 16 at17 (citing AR 29).) However, Buckley failed to evaluate those reasons. (*Id.*) Instead, he made a conclusory argument that the reasons were not specific. (*Id.*) Although the Court finds the ALJ's reasons were not clear and convincing, based on the Administrative Record, Buckley failed to articulate the necessary rationale for the Court to reach that conclusion.

Defendant concedes the ALJ erred with respect to Dr. Ledington's opinion but argues it was harmless. An error is harmless if it is "inconsequential to the ultimate nondisability determination," but "a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Marsh v. Colvin*, 792 F.3d 2170, 1173 (9th Cir. 2015) (quoting *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)).

First, Defendant argues it was harmless because the ALJ was not bound by Dr. Ledington's opinion on the ultimate issue of disability. Physicians offer two types of opinions in disability benefits cases, opinions on the level of a claimant's functional abilities and opinions on whether a claimant is capable of working (the ultimate issue of disability). *See Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). An ALJ is obligated to provide specific, legitimate reasons to reject a doctor's controverted opinion, even on the ultimate issue of whether the claimant can work. *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). Here, the ALJ failed to do so.

Next, Defendant argues that the error was harmless because the ALJ found Buckley not credible with respect to his symptom testimony regarding headaches. That could be a viable argument if the ALJ had rejected Dr. Ledington's testimony as based solely on Buckley's self-reports of headaches. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (finding it legitimate to discount a doctor's opinion because it is based on a claimant's symptom report only if the self-reports are not credible). However, the ALJ did not discount this doctor's opinion for that reason or any other reason. In summarizing Buckley's symptom testimony, the ALJ did not mention headaches. (AR 24, 29.) Buckley testified to frequent headaches at the November 2012 hearing (AR 95), he listed severe headaches in an October 2011 function report (AR 425, 428), he reported severe headaches to several doctors other than Dr. Ledington (AR 483, 484, 617-18, 621, 633, 641-43, 673 687, 711), and Dr. Ledington's opinion of disability based on headaches was mentioned at both hearings as well as being included in the written record. (AR 57,

93, 611.) Despite the well-developed record, the ALJ mentioned only in passing that one record (from Dr. Ledington) documented Buckley complaining of persistent, severe headaches. (AR 25.) The ALJ did not include headaches when summarizing Buckley's symptom testimony (AR 24) and did not discount Dr. Ledington's opinion based on Buckley's credibility. Further, the Court concluded the ALJ erred in rejecting Buckley's symptom testimony.

The Court is unable to conclude that, if the ALJ were to credit Dr. Ledington's opinion that Buckley was unable to work, the only reasonable decision would be to find Buckley not disabled. To the contrary, the ALJ stated at the hearing that if he were to accept Dr. Ledington's opinion, then he would conclude that Buckley could not work. (AR 57.) Therefore, the Court finds the ALJ's error was not harmless.

**Opinions of NP Trujillo, Dr. Wilson, and PA Rice**

Buckley argues the ALJ erred in discounting the opinions of NP Trujillo (whose opinion was signed by treating physician Dr. Wilson), and PA Rice.

Nurse Practitioner Trujillo and Dr. Wilson

On March 29, 2016, NP Trujillo and Dr. Wilson completed a Mental Work Tolerance Recommendation and opined that Buckley was markedly limited in understanding/remembering/carrying out detailed instructions, maintaining attention/concentration for brief (or extended) periods, maintaining attendance, establishing routine, working in proximity to others, completing a workday without psychiatric interruption, getting along with coworkers or the public, asking simple questions, accepting instruction/criticism, responding to work changes, traveling to unfamiliar places, and making independent plans; was mildly limited in remembering work procedures, understanding/remembering/carrying out simple instructions, making simple work decisions, and maintaining socially appropriate behavior; and could work 4 hours per day for 4 days per week. (AR 1008-10.) The ALJ gave this opinion no weight because NP Trujillo documented Buckley's GAF score as in the high 50s to 60, which indicates a much higher level of functioning than her mental work assessment; NP Trujillo is not mentioned

in the treatment records at Exhibit 35F; Dr. Wilson never clinically examined Buckley, recorded mental health findings (other than minimal in exhibit 26F), or reviewed the mental health records documenting a more functional GAF score; Dr. Wilson does not work at the same location as NP Trujillo; and the assessment is inconsistent with mental health treatment records, Buckley and his wife's function reports, and the opinions of Drs. DeLong and Pereya. (AR 22-23.)

The ALJ discounted the opinion, in part, because there is no evidence that NP Trujillo and Dr. Wilson worked in the same location. The Court finds this reason irrelevant to the opinion. Because both medical practitioners signed the form, the Court treats it as the independent opinion of both NP Trujillo and Dr. Wilson. The ALJ also relied on his finding that Dr. Wilson never reviewed Buckley's mental health treatment records. While true, Dr. Wilson was a treating physician for Buckley from 2012 to 2015. During that time, he documented Buckley's reports of depression and anxiety and prescribed medication for those symptoms. (AR 713, 715, 723, 724, 731, 737, 739, 743, 744.) Because Dr. Wilson was Buckley's primary care physician and treated him for mental health symptoms, there was no legitimate reason to discount his opinion for failure to review another provider's records.

The ALJ failed to explain the significance of NP Trujillo's alleged absence from the records contained in Exhibit 35F. In fact, NP Trujillo is found within that exhibit: as the Completing Staff person on 2015 and 2016 admission forms (AR 921, 926); as the prescriber for his psychiatric medications from April 2015 to February 2016 (AR 996-98); and as the signatory on four abnormal involuntary movement scale forms from 2015 and 2016 (AR 1000-03). Regardless, Exhibit 34F documents that NP Trujillo was Buckley's treating mental health practitioner from April 2015 to at least February 2016, seeing him eight times for psychiatric review and medication management. (AR 869, 878-79, 884-85, 888-89, 891-92, 894-95, 898-99, 901-02.)

By regulation, NP Trujillo was not an acceptable medical source and the ALJ needed to provide only germane reasons to reject her opinion.[2] *See Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017). Because Dr. Wilson was a treating physician, whose opinion was contradicted by other medical opinions, the ALJ must provide "specific and legitimate reasons that are supported by substantial evidence" to reject his opinion. *Lester*, 81 F.3d at 830. In evaluating the remainder of the ALJ's reasons for discounting the Mental Work Tolerance Recommendation, the Court finds they are equally applicable to the opinion of both NP Trujillo and Dr. Wilson.

The ALJ discounted the opinion of NP Trujillo and Dr. Wilson because it was inconsistent with Buckley's function reports, the function reports completed by his wife, and the opinions of examining psychologist George DeLong, Ph.D. and reviewing psychologist Rosalia Pereyra, Psy.D.[3] The ALJ is correct that the 2011 function reports from Buckley and his wife focus solely on Buckley's physical impairments and do not reflect that Buckley was experiencing limitations from mental health symptoms at that time. (AR 372-79, 389-97, 415-22, 425-33.) Similarly, in 2011, Drs. Pereyra and DeLong opined that Buckley had no medically determinable mental impairment or only mild limitations. (AR 175, 590-96.) Because this evidence dates from 2011, prior to any mental health treatment records, it is not surprising that neither Buckley nor the psychologists documented a severe mental impairment. However, the mental work assessment from NP Trujillo and Dr. Wilson stated the limitations were present in 2011, having begun in 2009 and continued to the 2016 date of the opinion. (AR 1010.) Therefore, the ALJ was correct

---

[2] If a nurse practitioner works closely with and under the supervision of a physician, she will be treated as an acceptable medical source. *See Taylor*, 659 F.3d at 1234. Buckley does not argue that NP Trujillo satisfied that rule and the Court did not identify record evidence to support such a finding.

[3] Buckley contends in his opening brief that the ALJ failed to identify any specific contradictions between NP Trujillo's opinion and the function reports or the opinions of the examining and reviewing psychologists. (Doc. 16 at 13.) Prior to finding a contradiction, the ALJ summarized the opinions of Drs. DeLong and Pereyra, which concluded that Buckley did not suffer from a severe mental impairment. (AR 21.) He also summarized and cited to the function reports at issue. (AR 20.) Thus, the ALJ identified the contradiction sufficiently for the Court's review.

that the function reports and other medical opinions were inconsistent with the opinion of NP Trujillo and Dr. Wilson, and the ALJ's finding was supported by substantial evidence.

Next, the ALJ found that the opinion of NP Trujillo and Dr. Wilson was inconsistent with the mental health treatment records, including GAF scores in the upper 50s to 60. The ALJ summarized Buckley's history of mental health treatment in his decision. (AR 21-22.) He noted that Buckley had been treated for depression and attended domestic violence classes. (AR 22.) Although he missed many sessions, Buckley reported doing well. (*Id.*) In 2015, Buckley reported more serious mental health symptoms, but he improved through treatment. (*Id.*) The summary is not a perfect representation of the Administrative Record, but it is not challenged by Buckley.[4] Upon review of the entirety of Buckley's mental health treatment records (AR 810-902, 936-92), the Court finds there is substantial evidence to support the ALJ's finding that Buckley responded to treatment and his treatment records contradict the level of impairment reflected in the Mental Work Tolerance Recommendation. As noted by the ALJ, Dr. Wilson did not document any mental health findings although he did diagnose Buckley with anxiety and depression. (AR 713-15, 724, 731, 737, 739, 743, 744.) Review of Dr. Wilson's records do not substantiate a finding that Buckley had marked mental health impairments. (AR 710-44.)

Buckley's mental health treatment providers assigned him GAF scores between 55 and 60. The GAF is a 100-point scale that measures a person's overall level of psychological, social and occupational functioning on a hypothetical continuum. *See* American Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* ("*DSM IV*"), at 32, 34 (4th ed. 2000). Lower numbers indicate more severe symptoms. A rating of 51 to 60 indicates "moderate symptoms (e.g., flat affect and circumlocutory speech, occasional panic attacks) or moderate difficulty in social, occupational, or school

---

[4] Buckley contends in his opening brief that the ALJ failed to identify any specific contradictions between NP Trujillo's opinion and Buckley's treatment records. (Doc. 16 at 13.) The ALJ summarized the treating records on the same page as his summary of NP Trujillo's opinion. (AR 22.) He also stated that the records as set forth in his decision did not support the finding of a severe mental impairment (AR 21-22), which is in clear contrast to the restrictive opinion of NP Trujillo. The ALJ identified the contradiction sufficiently for the Court's review.

functioning (e.g., few friends, conflicts with peers or co-workers)." *Id.* In March 2012, Buckley's treating provider assigned him a GAF score of 55 and then, for the remainder of the year, a score of 60. (AR 817, 819, 823, 834.) In 2015, NP Trujillo assigned GAF scores of 55 or 58. (AR 879, 885, 889, 892.) NP Trujillo found that Buckley was markedly limited in 15 categories, and not limited or only mildly limited in 6 categories; she did not find him moderately limited in any areas. (AR 1008-10.) The ALJ concluded those GAF scores indicated a much higher level of functioning than stated in NP Trujillo's opinion. The moderate GAF scores were inconsistent with the Mental Work Tolerance and there is substantial evidence to support the finding of inconsistency by the ALJ.

Although the Court rejected some of the ALJ's findings regarding the Mental Work Tolerance, the Court finds the ALJ provided multiple germane reasons to reject the opinion of NP Trujillo. The ALJ also provided specific, legitimate reasons supported by substantial evidence to reject the opinion of Dr. Wilson.

Physician's Assistant Rice

In September 2012, PA Rice opined that, since 2009, Buckley could do only part-time sedentary work, 4 hours per day for 3 days in a week. (AR 666, 667.) He could stand or sit for 30 minutes at a time, including riding in a vehicle (but no driving); could walk 15 minutes at a time; could not use foot controls or climb ladders; could climb up to 30 flights of stairs per day; must avoid crouching, kneeling, squatting, and reaching above shoulder level; could occasionally bend, sit in a clerical position, perform fine movements, and work with arms in front; could perform frequent pinching and feeling; and would miss 12 days per month. (AR 666-67.)

The ALJ gave PA Rice's opinion reduced weight because it was contradicted by the assessments and opinions of Drs. Ring and Werrell and the IME doctors; and treating physician Dr. Washburn disagreed with PA Rice's opinion. (AR 28.) Dr. Washburn stated that he disagreed with PA Rice's opinion because he believed Buckley could drive and do sedentary to light work,[5] and would not miss 12 days per month. (AR 698.)

---

[5] As pointed out by Buckley, Dr. Washburn used both the terms sedentary and light

To reject the opinion of a physician's assistant, an ALJ must provide germane reasons. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (noting that physician's assistants are considered an "other source" not an "acceptable medical source"). Although the ALJ did not rely on this distinction in evaluating the opinion of PA Rice, by regulation in place at that time, PA Rice did not qualify as an acceptable medical source.

Upon examination, Dr. Ring found Buckley had only a very mild limp and could tandem walk and heel/toe walk but was hesitant to fully flex his right knee due to a history of it locking up painfully. (AR 565.) His spine had a full ROM and his strength was intact. (*Id.*) Buckley's left shoulder had limited range of motion and the surgical history contraindicated lifting with the left arm. (*Id.*) Dr. Werrell's exam was largely normal with a noted restriction in range of motion for Buckley's left shoulder and a favoring of the right leg for walking and squatting. (AR 623.) The IME concluded there were no objective findings to support neck pain or headaches originating from the 2002 accident, Buckley's left shoulder exam supported his subjective complaints, and Buckley's complaints about his right knee were largely supported by the physical exam. (AR 679-81.)

The objective findings of these examining doctors contradicted PA Rice's very restrictive finding on Buckley's limitations. Thus, those findings and the opinions of those doctors was a germane reason to discount his opinion. *See Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985) (if an examining physician's opinion rests on independent clinical tests, it qualifies as substantial evidence to reject a treating physician's opinion). Additionally, portions of PA Rice's opinion were contradicted by Dr. Washburn, who treated Buckley over the course of many years. This is another germane reason to reject PA Rice's opinion. There is evidence to support at least portions of PA Rice's opinion, including Dr. Washburn's 2009-2012 determinations that Buckley was unable to work for substantial periods of time and the 2012 IME limiting Buckley to walking 15 minutes per hour.

---

to describe the work of which he believed Buckley was capable. However, he completed a formal assessment that provided Buckley could lift 10 pounds frequently and 20 pounds occasionally, and he could sit or stand for up to 4 hours at one time and walk for 2 hours at one time. These capabilities meet the requirements for light work. *See* 20 C.F.R. § 404.1567(b).

However, "the key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled." *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997). The Court finds the ALJ did not err in rejecting the opinion of PA Rice.[6]

**Vocational Expert Testimony**

Buckley argues that the testimony of the VE at the second hearing, in 2016, conflicted with the testimony of the first VE at the 2012 hearing. The ALJ presented each of the VEs with the same hypothetical. (AR 54, 101.) In 2011, the VE concluded that there were no jobs available for a person with that RFC. (AR 104-06.) In 2016, the VE determined there were at least three jobs available for a person with that RFC. (AR 56.) In his 2016 opinion, the ALJ found Buckley had the RFC of the person in that hypothetical. (AR 23-24.) He then relied on the second VE's testimony to conclude there was work available in the national economy that Buckley could perform. (AR 30-31.)

Buckley argues that the ALJ was obligated to resolve the conflict and to provide reasons to discount the opinion of the first VE. Buckley does not cite any law to support this argument. At Step Five, the ALJ bears the burden of establishing that a claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai*, 499 F.3d at 1074. The ALJ can meet his burden by relying upon the testimony of a VE or the Medical-Vocational guidelines. *Osenbrook v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). Here, the ALJ relied upon a VE's testimony, which provided substantial evidence to support his finding. *See id.* at 1163; *Tackett*, 180 F.3d at 1098 (defining substantial evidence as "more than a mere scintilla but less than a preponderance"). There

---

[6] Buckley also argues that Dr. Ledington "deferred" to the opinion of PA Rice. Whether anyone agreed with PA Rice is not relevant to this Court's evaluation of whether the ALJ provided a germane reason to discount the opinion of the physician's assistant. Further, in November 2012, Dr. Ledington stated that he could not attest to Buckley's current work tolerance and would "defer to the current treating provider." (AR 699.) This does not amount to agreement with PA Rice's opinion.

is no law holding that contradictory evidence precludes the VE's testimony from providing substantial evidence to support the ALJ's Step Five decision.

Next, Buckley argues that the VE at the 2016 hearing gave DOT number 211.462-018 for a parking lot attendant, but that number corresponds to a cashier wrapper (retail trade).[7] This appears to have been an irrelevant error. Both the cashier jobs cited by the VE (cashier, parking lot, and cashier, self-service) have the same DOT number 211.462-010, and the VE testified about the requirements of those jobs.

Buckley argues that the VE's testimony – that the cashier jobs and the lamination inspector job require only occasional overhead reaching – conflicted with the DOT, which states the jobs require frequent reaching. The VE's testimony regarding the lamination inspector job was problematic. First, the VE did not offer any testimony about the quantity of overhead reaching required for the lamination inspector job. Therefore, the ALJ erred in failing to address and resolve the conflict between the VE's testimony and the DOT with respect to this job. SSR 00-4p; *Johnson v. Shalala*, 60 F.3d 1428, 1436 (9th Cir. 1995). Second, Buckley argues that the VE suggested he would be off-task 25% of the time because of his need to alternate sitting and standing. The VE's testimony on this point was confusing and the Court is uncertain what the testimony meant. (AR 58-61.) It was clear, however, that the VE did not testify that the need to sit part of the day meant that Buckley would be off task for all jobs 25% of the day. The testimony related solely to the job of lamination inspector. Because the VE did not clarify the conflict between the DOT and his testimony regarding the lamination inspector job and because his testimony about the 25% erosion was incomprehensible, the Court excludes this job in evaluating whether the Commissioner carried her burden at Step Five.

As acknowledged by Defendant, the DOT identifies the cashier jobs as requiring frequent reaching. *See* 1991 WL 671840; 1991 WL 679735. The VE clarified that the job

---

[7] In his brief, Buckley recorded the DOT number given by the VE as 211.462-010. That is in fact the correct DOT number for Cashier II, which covers the position of cashier, parking lot. The Court discusses the number actually given by the VE at the 2016 hearing, 211.462-018.

of cashier (parking lot) does not require any overhead reaching only reaching at chest level; and the job of cashier (self-service) requires only occasional overhead reaching. (AR 64-65.) With respect to the cashiering jobs, the VE explained the conflict between the DOT requirement for frequent reaching and the ALJ's finding that Buckley could only occasionally reach overhead. The VE testified there would be approximately 198,000 cashier (parking lot) jobs nationally and approximately 200,000 cashier (self-service) jobs nationally. Thus, there is substantial evidence that a person with the RFC identified by the ALJ could perform other work available in the national economy at Step Five. *See Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014) (finding that 25,000 jobs nationally represent a significant number of jobs under the governing statute).

## CONCLUSION

A federal court may affirm, modify, reverse, or remand a social security case. 42 U.S.C. § 405(g). When a court finds that an administrative decision is flawed, the remedy should generally be remand for "additional investigation or explanation." *INS v. Ventura*, 537 U.S. 12, 16 (2006) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)); *see also Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004). However, a district court should credit as true physician opinions and a claimant's testimony that was improperly rejected by the ALJ and remand for benefits if:

> (1) the ALJ failed to provide legally sufficient reasons for rejecting the testimony; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Benecke*, 379 F.3d at 594; *Garrison*, 759 F.3d at 1021 (precluding remand for further proceedings if the purpose is solely to allow ALJ to revisit the medical opinion he rejected). The Ninth Circuit holds that application of the credit as true rule is *mandatory* unless the record creates serious doubt that the claimant is disabled. *Garrison*, 759 F.3d at 1021.

The first requirement is satisfied because the ALJ erred in rejecting the testimony of Dr. Ledington without explanation and in discounting Buckley's credibility without

clear and convincing reasons supported by substantial evidence. However, the Court finds further proceedings are necessary to resolve outstanding issues.

A finding of disability requires an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment." 20 C.F.R. § 416.905(a). An impairment must last or be expected to last for 12 or more months and must be "established by objective medical evidence from an acceptable medical source." 20 C.F.R. §§ 416.909, 416.921. The Court cannot find Buckley disabled from the alleged onset date (October 30, 2009) solely on the opinion of Dr. Ledington. He opined that Buckley was unable to work due to severe headaches from May through August 2011. (AR 578, 611.) Prior to May 2011, there are limited records documenting headaches. (AR 483 (July 2008), AR 484 (February 2010), AR 389-90 (April 2011 function report).) Similarly, there is no record of complaints or treatment for headaches beyond 2012. As of November 2012, Dr. Ledington declined to opine on Buckley's functional capacity as he was no longer treating him. (AR 699.) Based on the opinion of Dr. Ledington and other records, Buckley's headaches may have precluded work for 12 or more months; however, determining the relevant date range requires further proceedings. *See Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010) (upholding a remand for further proceedings when credited evidence does not identify an onset date). Upon remand, the ALJ must reconsider Dr. Ledington's opinion and Buckley's symptom testimony.

As pointed out in the Court's evaluation of the ALJ's credibility finding, it appears Buckley had limitations that precluded him from working for at least twelve months, beginning at the onset date of October 30, 2009, until at least June 2014. However, the ALJ did not explicitly reject Dr. Washburn's opinion as to this period, and Buckley did not argue that the ALJ erred in evaluating this evidence. Therefore, it does not meet the requirements for application of the credit-as-true rule. However, Dr. Washburn's 2009 to 2014 opinions on Buckley's functional ability to work must be re-evaluated upon remand. If the ALJ must infer an onset date, he may call a medical advisor to testify. SSR 18-1p.

Applying the required deference, the Court found no error in the ALJ's rejection of NP Trujillo and Dr. Wilson's opinion on Buckley's mental health limitations. Although there was "substantial evidence" to support the ALJ's finding that Buckley improved with treatment, his last mental health record, from February 2016, documented an increase in depressive symptoms, delusions, hallucinations, and suicidal ideas. (AR 901-02.) Also, at the March 2016 hearing, Buckley testified about his paranoia and anxiety and exhibited difficulty in testifying due to severe nervousness. (AR 44, 47-49.) Because the Court found that the ALJ erred in his rejection of Buckley's symptom testimony, he must reevaluate the mental health evidence upon remand.[8] As the Ninth Circuit has emphasized, mental health symptoms wax and wane during treatment. *See Garrison*, 759 F.3d at 1017. Buckley's treatment with NP Trujillo revealed significant symptoms in April 2015, improvement with treatment, but then an increase in serious symptoms in February 2016. The reviewing and examining psychologist offered opinions in 2011, prior to Buckley reporting any significant mental health symptoms. Therefore, their opinions are of little relevance to the lengthy record. Upon remand, the ALJ will need to review more current records and may need a new consulting examination.

The Court recognizes that Buckley's claim has been proceeding through the system for an extraordinarily long time and is reluctant to return the case for further administrative proceedings. However, due in part to its lengthy history over which Buckley's physical and mental health impairments varied, the Court finds the complexity precludes application of the credit-as-true rule.

Accordingly,

---

[8] Buckley did not argue in his briefs that, if you credited his symptom testimony, the ALJ would necessarily find him disabled. The Court did not independently identify symptom testimony that necessitated a disability finding without the development of additional evidence.

**IT IS ORDERED** that this case is remanded to the ALJ for a new hearing and further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court should enter judgment and close this case.

Dated this 28th day of March, 2019.


Honorable Lynnette C. Kimmins
United States Magistrate Judge